UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

MARY CHARLENE HAYS, Personal                    CASE NO. 09-81881-CIV-KAM
Representative of the Estate of William
Hays,

        Plaintiff,

v.

FOSTER WHEELER ENERGY
CORPORATION, HONEYWELL
INTERNATIONAL INC., CRANE CO.,
JOHN CRANE, INC., VELAN
VALVE CORPORATION

        Defendants.

_____/

**JOHN CRANE INC.'S MOTION IN LIMINE
TO EXCLUDE CAUSATION TESTIMONY OF
DR. ARNOLD BRODY AND DR. JERROLD ABRAHAM**

        Pursuant to Rule 702 of the Federal Rules of Evidence and the Local Rules of this Court,

Defendant John Crane Inc. (JCI) seeks an Order excluding testimony that "each and every"

occupational asbestos exposure substantially contributes to mesothelioma.  As explained below,

the failure to quantify any particular exposure renders the "substantial factor" causation test

meaningless.  The "every exposure" opinion is also unreliable under Rule 702 because it is a

hypothesis lacking in scientific foundation.

**I.      INTRODUCTION**

        This is a maritime asbestos products liability action.  Plaintiff claims that her husband,

William S. Hays, worked with or around asbestos-containing products manufactured by JCI and

numerous others during his lengthy naval career.[1]  These products, she claims, caused Mr. Hays' malignant mesothelioma, which ultimately led to his passing on December 29, 2009.  The Fourth Amended Complaint [D.E. 360] asserts separate causes of action against Defendants based on Negligence (Count I); Strict Liability (Count II); Failure to Use Reasonable Care (Count III);[2] Wrongful Death (Count IV) Loss of Consortium (Count V) and Punitive Damages (Count VI).[3]  At this point, only the claims against JCI and Crane Co. remain.

To prevail, Plaintiff must prove that JCI's products can cause mesothelioma, and that those products substantially contributed to Mr. Hays' disease.  Both of Plaintiff's causation experts — Dr. Arnold Brody and Dr. Jerrold Abraham — opine that "every" occupational exposure, no matter how small or large, was "substantial."  Neither expert, however, will quantify — even approximately — Mr. Hays' lifetime dosage to JCI's packing or gaskets (or any product).  Nor will they opine that Mr. Hays' lifetime exposures to JCI's products were sufficient to trigger his mesothelioma.  Rather, they believe that all asbestos is toxic and that all fibers cause cancer, regardless of fiber type or dose — as long as that dose is above "ambient levels."

Dr. Brody and Dr. Abraham's failure to quantify any particular exposure renders the applicable substantial factor test meaningless.  Additionally, the notion that "every exposure" substantially contributes is unreliable under Rule 702 because it lacks scientific foundation.  This Court should, like numerous others, preclude Plaintiff's experts from testifying that JCI's products substantially contributed to Mr. Hays' mesothelioma.

---

[1] The case began as a personal injury action while Mr. Hays was still alive.  After his passing, Plaintiff amended the Complaint to assert claims based on wrongful death.
[2] Plaintiff asserted this claim against Defendants claiming that they are not a "Manufacturer Under Fla. Stat. 774.208)."  This claim does not apply to JCI.
[3] The MDL 875 Court severed this claim upon remanding the matter to this Court for trial.  *See* Suggestion of Remand, at ¶ h [D.E. 32].

## II.      MR. HAYS' ALLEGED EXPOSURES

Mr. Hays primarily worked for four employers during his career.[4]  From 1959 through 1981, he served as a boiler technician in the United States Navy.  He also, while on a short break from the Navy, worked as a boiler tender for Pratt Whitney Aircraft from 1969-1971.  After retiring from the Navy, he worked briefly for R.J. Ackerman Construction.  Later that year, he became a mechanical welding inspector at U.S. Testing Company, where he worked until 1991.  At that time, he began working as a quality control inspector for FPL at the same location.[5]

The majority Mr. Hays' alleged exposure occurred during his time in the Navy.  For nearly twenty (20) years, he served aboard seven (7) ships loaded with asbestos-containing thermal insulation.  In addition to gaskets and packing, he worked around all types of equipment, including generators, turbines, boilers, controls, pumps, valves, steamlines, pipe covering, insulating cements, refractory cements, cloth and, steam traps.[6]  Plaintiff alleges that *all* of this equipment and/or material contained asbestos.  The same holds true for equipment and products Mr. Hays worked around during a brief break during his enlistment, and following his discharge.

Against this background, Mr. Hays commenced this lawsuit.

## III.     DR. BRODY AND DR. ABRAHAM'S CAUSATION TESTIMONY

Asbestos, a naturally-occurring mineral resistant to both heat and corrosion, was used in thousands of products.  As set forth below, Dr. Brody and Dr. Abraham conclude that *all* asbestos is dangerous and *all* of it substantially contributes to cause mesothelioma, regardless of exposure duration or fiber type.  Because they believe that all occupational exposures are causative, they do not quantify Mr. Hays' exposure to any particular product.

---

[4] *See* Plaintiff's Videotape Deposition (October 16, 2009), Preservation Dep. Ex. 2 (resume), attached as Exhibit "A".
[5] *See id.*
[6] *See* Sworn Information Form, attached as Exhibit "B".

**A.**  **Dr. Arnold Brody**

Dr. Brody, a cellular biologist and research pathologist, is a professor at North Carolina State University in the Department of Molecular and Biomedical Sciences.[7]   He believes that all types of asbestos fibers — including chrysotile — cause mesothelioma and other diseases.[8]  He recognizes that "[l]onger fibers [from the amphibole family] are more dangerous than short fibers [chrysotile]."[9]  However, he opines that "no size range of fibers can be excluded as an agent in causing mesothelioma or any of the asbestos-related diseases."[10]

Dr. Brody agrees that "asbestos-induced cancers are dose-response diseases, in that the more asbestos a person is exposed to, the more likely that person is to develop disease."[11]  Once a person develops cancer, Dr. Brody cannot exclude *any* "above-background exposures to asbestos from the causal chain."[12]  Accordingly, "each and every exposure to asbestos that an individual with mesothelioma experienced in excess of a background level contributes to the development of the disease."[13]

Dr. Brody's report does not provide a specific causation opinion.  It does not include any case-specific detail such as Mr. Hays' work history or the type of asbestos-containing products he encountered during his lifetime.  Nor does it discuss type of fibers those products contain,

---

[7] *See* Expert Report, Dr. Arnold R. Brody, Dec. 9, 2010, at 1, attached as Exhibit "C".
[8] *Id.* at 2.
[9] *Id.* at 7.
[10] *Id.*
[11] *Id.* at 23; *see also* Transcript of Testimony of Dr. Arnold R. Brody at 88, *Reivitt* v. *Guard-Line, Inc.*, No. CC-03-05935-C (Dallas Cnty., Tx. Sept. 28, 2005), attached as  (stating that the body's defense mechanisms clear about ninety-five percent of the asbestos fibers humans inhale; accordingly, when assessing causation, dose is "absolutely" important with respect to asbestos).
[12] Brody Report, Exhibit "C", at 24 ("[N]o amount of exposure to asbestos above the background levels present in ambient air has been established as too low to induce mesothelioma."); Transcript of Testimony of Dr. Arnold R. Brody at 87, *Reivitt* v. *Guard-Line, Inc.*, No. CC-03-05935-C (Dallas Cnty., TX Sept. 28, 2005) ("Q. And you found there that even people who have never been exposed to asbestos on a work site still have millions of fibers of asbestos in their lungs, correct?  A Yes.  We have millions of fibers of asbestos in our lungs.  You can fit about a billion fibers into a thimble.  So it's background.  *Background is a lot of fibers, but for us to have those fibers in our lungs is not expected to cause disease.*") (emphasis added).
[13] *Id.* at 23-24.

4

their potency or whether any asbestos in those products was encapsulated. Also absent is any effort to quantify Mr. Hays' exposure to the products of any particular defendant. Instead, he believes that each and every one of them substantially contributed to Mr. Hays' mesothelioma.

**B.    Dr. Jerrold Abraham**

Dr. Abraham is a board-certified pathologist and Professor of Pathology and Director of Environmental Occupational Pathology at the State University of New York (SUNY) Upstate Medical University, in Syracuse, N.Y. His report, dated December 13, 2010, discusses the characteristics of asbestos fibers, the diagnosis of mesothelioma, how asbestos causes it and finally, mentions Mr. Hays' specific exposures.[14]

Like Dr. Brody, Dr. Abraham opines that all fiber types can cause mesothelioma. Unlike Dr. Brody, however, he does not discuss the gradient of toxicities of the different fiber bodies.[15] Dr. Abraham does, though, conclude that a dose-response relationship exists between asbestos exposure and the development of mesothelioma.[16] In other words, the more asbestos a person encounters, the greater the risk of developing an asbestos-related disease.[17]

These "cumulative exposures," over time, "collectively avoid and overwhelm the body's defense mechanisms."[18] Like Dr. Brody, Dr. Abraham believes that "every exposure contributes to this process and the eventual disease sustained by the individual."[19] This, however, discounts "ambient exposures", which consist of "that exposure that someone would be

---

[14] *See* Expert Report, Dr. Jerrold L. Abraham, Dec. 13, 2010, attached as Exhibit "E". Dr. Abraham prepared two reports in this case. His initial report dated August 4, 2010 concludes that Mr. Hays passed from mesothelioma caused by asbestos exposure. The conclusions in that report are not at issue here.
[15] *See id.* at 1, 4.
[16] *Id.* at 3.
[17] *Id.*
[18] *Id.*
[19] *Id.; see also id.* at 4 ("[T]here is no known safe level of asbestos exposure established for the prevention of mesothelioma."); Abraham Dep. 35:23-36:3, Jan. 25, 2011, attached as Exhibit "F".

exposed to absent any other source of exposure."[20]   In other words, ambient exposures are those non-workplace encounters with asbestos that everyone has everyday.[21]

Dr. Abraham reviewed certain case-specific materials including a hand-written summary by Mr. Hays which details his work locations and many of the products he encountered.[22]   He did not, however, quantify the cumulative dose of any particular product.[23] At the time of Dr. Abraham's deposition, he hadn't "seen that detail."[24]   Rather, he was asked to *assume* that Mr. Hays worked with or around these products during his career.[25]   He will opine that each occupational exposure is a substantial contributing cause of Mr. Hays' mesothelioma.[26] And because Mr. Hays' exposures are part of his cumulative lifetime dose, "each and every one of those would be [a] substantial contributing factor."[27]   He concludes that, based on his "use of the term substantial contributing factor, including that if any one of those exposures had been Mr. Hays' only exposure and he developed a mesothelioma, that would have been 100% of the cause."[28]

## IV.   THE FAILURE TO QUANTIFY MR. HAYS' EXPOSURES IMPROPERLY RELIEVES PLAINTIFF FROM SATISFYING THE SUBSTANTIAL CONTRIBUTING CAUSE REQUIREMENT

---

[20] *Id*. at 36:19-23; *see also id*. at 77:1-4 (stating that ambient exposures are not part of the "cumulative exposure").

[21] *See Id*. at 40:2-8 ("If that — his ambient exposure was whatever it was is an ambient exposure, and it wasn't in someplace where there was known point sources of asbestos, there would be no demonstrable risk of increased risk of mesothelioma, so I wouldn't be able to blame his mesothelioma on that ambient exposure if he happened to get one.").

[22] *See* Abraham Report, Dec. 13, 2010, Exhibit "E", at 4.

[23] *Id*.; *see also* Abraham Dep., Exhibit "F", 38:14-20 ("I haven't seen any measurements of his ambient exposure or of his workplace exposure.").   Neither did Dr. James Millette, another of Plaintiff's experts.   *See* Millette Dep. 52:13-53:7, Feb. 8, 2011, attached as Exhibit "G" (Dr. Millette did not attempt to derive a fiber/cc-year dose of asbestos-containing products that Mr. Hays might have encountered and specifically, to Mr. Hays' exposure to JCI's products).

[24] *See* Abraham Dep., Exhibit "F", 44:11-25.

[25] *See* Abraham Report, Dec. 13, 2010, Exhibit "E", at 4.

[26] *Id*. (noting that all forms of asbestos and product brands encountered by Mr. Hays "were substantial contributing factors in the development of his disease").

[27] Abraham Dep., Exhibit "F", 44:15-26; *see also id.* at 47:3-7 ("I don't need to know what the names [of defendants] are at this point, but I would be glad to say I haven't seen any names specifically other than what might be in his deposition that I haven't committed to memory.").

[28] *Id*. at 50:5-14 ("So that — that's why I can't exclude any exposures as being substantial contributing factors.").

### A.   Causation Standard

In a maritime case such as this, plaintiffs may sue under negligence and strict liability.[29]   To prevail under either theory, plaintiffs must demonstrate causation.[30]   In this context, a plaintiff must show, "*for each defendant*, that (1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered.[31] "[W]here a plaintiff relies on proof of exposure to establish that a product was a substantial factor in causing injury, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'"[32]

Mesothelioma is a dose-response disease.[33]   "The dose-response relationship is '[a] relationship in which a change in amount, intensity, or duration of exposure to an agent is associated with a change-either an increase or decrease-in risk of disease.'"[34]   It follows that toxic tort plaintiffs must establish "the levels of exposure that are hazardous to human beings generally as well as the plaintiff's actual level of exposure to the defendant's toxic substance before he or she may recover."[35]   An expert who ignores the dose-response relationship "casts suspicion on the reliability of his methodology."[36]

Several Federal courts hold that demonstrating a "substantial contributing" factor involves far more than an expert labeling an un-quantified dose as a substantial contributor.  In

---

[29] *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005).

[30] *Id.* (citations omitted).

[31] *Id.* (citations omitted).  The same holds true under Florida law.  *See* Fla. Stat. § 774.204(1) (2014). ("Physical impairment of the exposed person, to which asbestos or silica exposure was a substantial contributing factor, is an essential element of an asbestos or silica claim.").

[32] *Id.* (citations omitted) (internal quotation marks omitted).

[33] *See In re Garlock Sealing Technologies, LLC*, 504 B.R. 71, 76 (W.D.N.C. 2014) ("There is a 'dose-response' element to the development of mesothelioma: A higher and more prolonged dose of asbestos increases the chance of developing the disease.").

[34] *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1241-1242  (11th Cir. 2005) (citation omitted).

[35] *Id. at* 1241 (citation omitted) (internal quotation marks omitted).

[36] *Id.* at 1242-1243 (affirming exclusion of expert who offered no opinion about dose necessary to cause strokes or heart attacks; rather, expert said only that any amount was too much).

*Lindstrom v. A-C Product Liability Trust*,[37] a maritime asbestos products liability case, the decedent was a merchant seaman from 1963 through 1994.[38]  He contracted mesothelioma after working around asbestos-containing equipment, including gaskets and packing, aboard several ships.[39]  The District Court granted summary judgment in favor of several defendants, ruling that the plaintiff could not simply claim that every exposure contributed.

In an effort to defeat summary judgment, the plaintiff served an affidavit of a physician, contending that each of the plaintiff's "occupational exposures to asbestos aboard ship . . . were [*sic*] a substantial contributing factor to his . . . mesothelioma."[40]  The expert's affidavit also stated that the medical and scientific community could not exclude any exposure as a potential cause.[41]

The District Court observed that plaintiff's affiant did not "specifically reference the product of any particular Defendant."[42]  Instead, he opined that "there is no safe level of asbestos exposure, and that every exposure to asbestos, however slight, was a substantial factor in causing [the plaintiff's] injury."[43]  Rejecting this proffer , the District Court observed that if the plaintiff could meet his burden through such testimony, the "substantial factor" standard "would be meaningless."[44]

The Sixth Circuit affirmed the summary judgment, reiterating that plaintiff must show, "for each defendant," that he was exposed to their product and that the product

---

[37] 424 F.3d 488 (6th Cir. 2005).
[38] *Id.* at 491.
[39] *Id.*
[40] *Id.* at 493.
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.*

substantially contributed to the mesothelioma.[45]   The plaintiff did not, the Court explained, "make a showing with respect to *each* defendant that the defendant's product was a substantial factor in plaintiff's injury."[46]   "A holding to the contrary would permit imposition of liability on the manufacturer of any product with which a worker had the briefest of encounters on a single occasion."[47]

A subsequent decision from the U.S. Court of Appeal for the 6th Circuit — *Moeller v. Garlock Sealing Technologies, LLC,*[48] — reinforces this point.  In *Moeller,* the plaintiff worked with Garlock's asbestos-containing gaskets for approximately eight years.[49]  He also worked with other types of asbestos insulation.[50]  At trial, the plaintiff presented "every fiber" testimony from Dr. Arthur Frank.[51]  Garlock moved for a directed verdict, arguing that the plaintiff failed to establish causation.  The District Court denied the motion and Garlock appealed.  The Sixth Circuit, reversed.

In so doing, it noted that the plaintiff's experts never specifically testified that the decedent's exposure to Garlock gaskets substantially contributed to his mesothelioma.[52]  Referencing *Lindstrom,* the Sixth Circuit noted that the plaintiff presented no evidence quantifying the decedent's exposure from Garlock gaskets.[53]  Although the decedent stated that he removed gaskets for several years and that he worked with Garlock gaskets "every day", the

---

[45] *Id.* at 492.
[46] *Id.*
[47] *Id.*
[48] 660 F.3d 950 (6th Cir. 2011).
[49] 660 F.3d at 952.
[50] *Id.*
[51] *Id.* at 954.
[52] *Id.* at 955.
[53] *Id.*

experts did not examine how many were removed or how frequently the decedent removed or installed them.[54]

The Court noted that, while the plaintiff's "exposure to Garlock gaskets may have contributed to his mesothelioma, the record simply does not support an inference that it was a *substantial* cause of his mesothelioma."[55]   Because the plaintiff failed quantify the decedent's exposure from Garlock gaskets and admittedly was exposed by other products, "there is simply insufficient evidence to infer that Garlock gaskets probably, as opposed to possibly, were a substantial cause" of the decedent's mesothelioma.[56]   Based on the "every exposure" evidence, "saying that that exposure to Garlock gaskets was a substantial cause of [the decedent's] mesothelioma would be akin to saying that one who pours a bucket of water into the ocean has substantially contributed to the ocean's volume."[57]

Most recently, in *Sclafani v. Air & Liquid Sys. Corp.*[58], the U.S. District Court for the Central District of California excluded Dr. Brody for the same reasons.   There, several defendants asked the Court to preclude the very same "every exposure" testimony at issue here.[59] The District Court reiterated that the "substantial factor" test required the plaintiff to demonstrate that, to a "reasonable medical probability", a particular product was a substantial factor "in

---

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.* (citing *Gregg v. V-J Auto Parts, Co.*, 596 Pa. 274, 943 A.2d 216, 223 (2007)).

[58] Nos. 2:12–CV–3013–SVW–PJW & 2:12–CV–3037–SVW–PJW, 2013 WL 2477077 (C.D. Cal. May 9, 2013).

[59] *Compare* Brody Report, Exhibit "C", at 23-24.   ("Once a person develops an asbestos-related cancer, it is not possible to exclude any of the person's above-background exposures to asbestos from the causal chain.   From a scientific and biological point of view, each and every exposure to asbestos that an individual with mesothelioma experienced in excess of a background level contributed to the development of the disease."), *with* the Brody Report in *Sclafani*, at 21-22, ¶ 45, attached as Exhibit "H" ("Once a person develops an asbestos-related cancer, it is not possible to exclude any of the person's above background exposures to asbestos from the causal chain.   Each and every exposure to asbestos that an individual with mesothelioma experienced in excess of a background level contributed to the development of the disease.").

contributing to the 'aggregate *dose* of asbestos the plaintiff or decedent inhaled or ingested.'"[60] The District Court noted that, "as a legal issue, accepting Dr. Brody's opinion as true would render the 'substantial factor' prong of the causation test meaningless. If 'each and every exposure' is a *substantial factor* in leading to the development of mesothelioma, then all a plaintiff would have to do is prove 1) that he had mesothelioma; and 2) that he was exposed to asbestos at some time."[61]

> **B.    Dr. Brody and Dr. Abraham Fail to Quantify Any Of Mr. Hays' Exposures To JCI's Products**

Here, as in *Lindstrom* and *Sclafani*, allowing Dr. Brody and Dr. Abraham to present "every exposure" testimony would effectively circumvent Plaintiff's burden of demonstrating substantial factor causation under maritime law. The testimony simply renders the standard meaningless. If every occupational exposure is causal, it would not matter whether its source was from sawing pipe insulation, ripping out firebrick, or handling an encapsulated sealing product. All would be equally to blame. As the experts recognize, however, asbestos — containing products do not create identical risks of harm.

---

[60] *Sclafani*, 2013 WL 2477077, at *4.

[61] *Id.* Other courts reach similar conclusions. *See Davidson v. Georgia Pacific LLC*, No. 12-1463, 2014 WL 3510268, at * 6 (W.D. La. July 14, 2014) (excluding "every fiber" causation testimony, finding that, under Louisiana law, "the 'every exposure' theory conflicts with the 'substantial factor' test of causation . . . . If a plaintiff could establish causation with the 'every exposure' theory, then every exposure to asbestos would be deemed a substantial factor, no matter the 'frequency, duration, and proximity of exposure.'"); *Mannahan v. Caterpillar, Inc.*, No. 12-CI-02070, 2014 WL 699090, at *1 (Ky. Feb. 17, 2014) (excluding "every fiber" testimony; "Expert testimony that any and all asbestos exposure contributed to Plaintiffs [*sic*] mesothelioma does not establish that exposure to Defendants' products was a substantial factor in causing Plaintiffs disease."); *Smith v. Kelly-Moore Paint Co., Inc.*, 307 S.W.3d 829, 839 (Tex. App. 2010) ("It appears well-established in the scientific literature . . . that there is a threshold dose above which a person has an elevated risk of developing asbestosis from chrysotile-only exposure. But that same evidence does not support a minimum threshold dose for chrysotile only exposure that would increase one's risk of developing mesothelioma."); *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (applying Kentucky law) (rejecting "every exposure" theory because it rendered substantial factor test "meaningless") (quoting *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 493 (6th Cir. 2005)); *Gregg v. V-J Auto Parts, Co.*, 943 A.2d 216, 227 (Pa. 2007) (labeling each and every exposure opinion a "fiction" and holding that it cannot properly "support the conclusion that the product sold by the defendant was a substantial factor in causing the harm"); *Bartel v. Curtiss-Wright, Inc.*, 316 F. Supp. 2d 603, 611 (N.D. Oh. 2004) ("[T]he opinion of Dr. Frank, that every breath [plaintiff] took which contained asbestos could have been a substantial factor in causing his disease, is not supported by the medical literature.").

Under Plaintiff's theory, all conceivable occupational exposures are substantial contributing factors.  Accordingly, Plaintiff completely ignores the requirement of proving specific causation, i.e., that a particular defendant's product was a "substantial" factor in causing the mesothelioma.  These opinions improperly allow the jury to bypass the substantial factor test in deciding causation.  Effectively, they are telling the jury that they do not need to consider the manner in which Mr. Hays might have been exposed to an asbestos-containing product.  They also would have the jury find legal liability for all of Mr. Hays' exposures, regardless of dose. The opinion is contrary to maritime law, and the Court must exclude it.

## V.    THE UNTESTED 'EVERY EXPOSURE' THEORY IS FATALLY UNRELIABLE UNDER *DAUBERT*

Expert testimony has the potential to be "both powerful and quite misleading because of the [jury's] difficulty in evaluating it."[62]  Plaintiff, as the party seeking to admit proposed expert testimony, "bears the burden of demonstrating that each of [her] proffered experts is qualified to render an expert opinion, that the opinion is reliable, and that the opinion would assist the trier of fact in resolving a disputed issue of material fact."[63]  Plaintiff must make this showing "by a preponderance of the evidence."[64]  As set forth below, Plaintiff cannot satisfy her burden as a matter of law because, under the standards established by the U.S. Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals*,[65] the testimony of Dr. Brody and Dr. Abraham are not based on scientifically valid methodology.

### A.    Admissibility Of Expert Opinions Under FRE 702 And *Daubert*

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert

---

[62] *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citation omitted).
[63] *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004); *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).
[64] *Id.*
[65] 509 U.S. 579 (1993).

testimony.  Under it, witnesses qualified as experts by "knowledge, skill, experience, training, or education" may offer opinions if (a) their scientific, technical or other specialized knowledge will help the jury understand the evidence; (b) they base their testimony on "sufficient facts or data"; (c) they use reliable principles and methods and (d) they reliably apply those principles and methods to the facts before them.[66]  District Courts, through an "exacting analysis", apply Rule 702 to ensure that "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."[67]  "The court serves as a gatekeeper, charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand."[68]  "The importance of *Daubert's* gatekeeping requirement cannot be overstated."[69]

In *Daubert*, the Supreme Court set forth four non-inclusive factors that district courts should consider when assessing the reliability of an expert's testimony under Rule 702: (1) whether the theory or technique can be tested; (2) whether it has been subjected to peer review; (3) whether the technique has a high known or potential rate of error; and (4) whether the theory has attained general acceptance within the scientific community.[70]  These factors are a starting point; the Eleventh Circuit has identified additional relevant criteria such as whether the expert improperly relies "on anecdotal evidence (as in case reports), temporal proximity, and improper extrapolation (as in animal studies)."[71]

---

[66] Fed. R. Evid. 702.
[67] *Cobra Intern., Inc. v. BCNY Intern., Inc.*, No. 05-61225-CIV, 2013 WL 3938659, at *2 (S.D. Fla. July 30, 2013) (citations omitted); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).
[68] *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1250 (11th Cir.2007).
[69] *Frazier*, 387 F.3d at 1260; *see also Rider v. Sandoz Pharms. Corp.*, 295 F.3d 1194 (11th Cir. 2002) ("Although making determinations of reliability may present a court with the difficult task of ruling on matters that are outside of its field of expertise, this is 'less objectionable than dumping a barrage of scientific evidence on a jury, who would likely be less equipped than the judge to make reliability and relevance determinations.'")
[70] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999).
[71] *Allison*, 184 F.3d at 1312 (citations omitted).

13

The District Court's gatekeeping function requires that it "analyze not what the experts say, but what basis they have for saying it."[72]  Importantly, "[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."[73]

Under the exacting and rigorous analysis required by *Daubert*, the specific "every fiber" testimony of Dr. Brody and Dr. Abraham is unreliable and without scientific validity.

**B.      Other Courts Reject The "Every Fiber" Theory As Unreliable**

Other courts, including many recent Federal decisions, reject the "every fiber" opinion under *Daubert*.  For example, in *Sclafani*, the District Court found Dr. Brody's testimony inadmissible under Rule 702 and *Daubert*.  More specifically, the plaintiffs did not "demonstrate that Dr. Brody's opinion is the product of reliable techniques."[74]  This is because he never made the basis for his "every fiber" theory clear; he referenced several studies, but each conclude only that "'no amount of exposure to asbestos above the background levels present in ambient air has been established as too low to induce mesothelioma.'"[75]  The Court also focused on Dr. Brody's testimony from a 2006 case, in which he "conceded that 1) there was no data to establish that all exposures contribute to mesothelioma; 2) his theory could not be tested; 3) his theory had not been published in any peer review literature; and 4) had not been 'put together as

---

[72] *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311 (9th Cir. 1995)
[73] *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).
[74] *Sclafani*, 2013 WL 2477077, at *5.
[75] *Id.*

a scientific principle and tested.'"[76]   Thus, Dr. Brody could not meet at least two of the four criteria set forth by *Daubert* when assessing the "every exposure" theory's reliability. [77]

A short time later, in *Anderson v. Ford Motor Company, et al*, the U.S. District Court for the District of Utah reached a similar conclusion, barring testimony about the "every exposure" theory under Rule 702 and *Daubert*.[78]   There, several defendants sought exclusion of the plaintiff's specific causation testimony.   As in this case, neither of the plaintiff's experts specifically analyzed the decedent's alleged exposures to any type of product.[79]   If this were the standard, the Court noted, "all Plaintiff must do at trial is show that [the decedent] was exposed to some minimal amount of asbestos from the product of a Defendant at some point in his life, and that Defendant could be found liable for his mesothelioma."[80]   Following another recent District Court decision in *Smith v. Ford Motor Company*,[81] the Court analyzed the underlying facts and data along with the principles and methods used by plaintiff's experts.

As to the former, the Court observed that the plaintiff's experts could not reference any studies demonstrating that "any exposure" above background causes mesothelioma.[82]   They instead observed that "scientists have been unable to determine a safe level for exposure to asbestos."   Further, scientists have not determined a way to identify the responsible fibers or exposures.[83]   Thus, the experts not only lacked the data as to the level of dose necessary to cause mesothelioma, but had no information on the decedent's exposure to the

---

[76] *Id.*
[77] *Id.*; *see also Sclafani v. Air & Liquid Systems Corp.*, No. CV 12–3013 SVW, 2014 WL 1613912, at *4 (C.D. Cal. Apr. 17, 2014) (reiterating the reasons for Dr. Brody's exclusion).
[78] Case No. 2:06-CV-741 TS, 2013 WL 3179497 (D. Utah, June 24, 2013).
[79] *Id.* at *2.
[80] *Id.* at *4.
[81] No. 2:08-cv-630, 2013 U.S. Dist. LEXIS 7861, at *7-10 (D. Utah Jan. 18, 2013).
[82] *Id.* at *5.
[83] *Id.*

defendant's products, or what types of fibers those product might contain.[84]   The experts' data came from medical reports demonstrating that, at some point, the decedent encountered substantial amounts of asbestos.  But the experts had "no information on whether that substantial exposure had any relation to the remaining Defendants before the Court . . ."[85]

As in *Smith*, the court noted that, as opposed to sufficient facts and data, the plaintiff's experts premised their "every exposure" theory on a "lack of facts an data."[86]   This, the Court ruled was "not reliable enough evidence for the Court to allow it in under the standards of *Daubert* and Rule 702."[87]

The Court then focused on the principles and methods employed by the experts. The Court noted that plaintiffs in toxic tort cases rely on experts to establish the levels of exposure to a product which are harmful to humans along with the plaintiff's level of exposure to a particular product.[88]   There, however, the plaintiff's experts merely claimed (as here) that any level of exposure above background is harmful; accordingly, an examination of the decedent's actual exposures was unnecessary.  This was so despite the acknowledgment that mesothelioma is a dose-response disease.  However, the experts "simply do not have the sufficient scientific information to allow them to testify in further detail regarding a dosage that does pose a significant risk of mesothelioma."[89]   This was "troubling" for several reasons:

- due to the lag time between the alleged exposures and onset of disease, the "every exposure" theory can't easily be tested;

- the plaintiff's experts did not know which exposures or which fibers caused the disease;

---

[84] *Id.*
[85] *Id.*
[86] *Id.*
[87] *Id.*
[88] *Id.* at *6.
[89] *Id.*

- the theory has no known error rate; and

- It is not known if the odds of people with very little exposure of contracting mesothelioma are "one out of a million or one out of a hundred."[90]

The Court further noted that the plaintiff supplemented the record with several articles and studies to support the claim that no known safe exposure level exists.  But the plaintiff's experts did not introduce any studies demonstrating that "the type of exposure [the decedent] had to Defendants' products is likely to cause mesothelioma."[91]   And while the plaintiff's theory might have "some acceptance in the scientific community," the Court noted that a growing number of courts have determined that the theory is not proper under *Daubert* and Rule 702, expressing the opinion that the "any exposure theory is, at most, scientifically-grounded speculation: an untested and potentially untestable hypothesis."[92]   Against this background, the Court excluded the proposed specific causation testimony from the plaintiff's experts.

The *Anderson* Court was but one of many to reject the "any exposure" theory under the *Daubert* or *Frye* standards.  An extensive, but not exhaustive list is below:

- *Davidson v. Georgia Pacific, LLC*[93] — excluding testimony under *Daubert*; "[t]he 'every exposure' theory is not testable, and consequently cannot have an error rate, thus failing to satisfy two *Daubert* factors."

- *Smith v. Ford Motor Co.*[94] — excluding "each and every fiber" testimony by Dr. Hammar; "Dr. Hammar's opinion is, as a matter of law, unsupported by sufficient or reliable scientific research, data, investigation or studies, and is inadmissible under" *Daubert*.

---

[90] *Id.*
[91] *Id.*
[92] *Id.* (citations omitted) (internal quotation marks omitted).
[93] No. 12-1463, 2014 WL 3510268, at * 5 (W.D. La. July 14, 2014).
[94] No. 2:08-cv-630, 2013 U.S. Dist. LEXIS 7861, at *7-10 (D. Ut. Jan. 18, 2013).

- *Betz v. Pneumo Abex LLC*[95] — affirming exclusion of testimony under *Frye;* "Dr. Maddox's any-exposure opinion is in irreconcilable conflict with itself. Simply put, one cannot simultaneously maintain that a single fiber among millions is substantially causative, while also conceding that a disease is dose responsive."

- *Butler v. Union Carbide Corp.*[96] — affirming exclusion of "any exposure" theory; "In summary on the first, crucial element of *Daubert's* scientific knowledge test, Dr. Maddox's 'any exposure' theory is, at most, scientifically-grounded speculation: an untested and potentially untestable hypothesis."

- *Georgia-Pacific Corp. v. Stephens*[97] — "The [Plaintiffs'] experts failed to show, however, that the 'any exposure' theory is generally accepted in the scientific community — that *any* exposure to a product that contains asbestos results in a statistically significant increase in the risk of developing [cancer].") (emphasis in original.

- *In re W.R. Grace & Co.*[98] — under *Daubert,* "[t]he use of the no safe level or linear 'no threshold' model for showing unreasonable risk 'flies in the face of the toxicological law of dose-response, that is, that 'the dose makes the poison. . . .'"

As in *Anderson, Sclafani* and *Smith,* the opinions of Dr. Brody and Dr. Abraham are missing the "necessary research and data to show that [the decedent's] alleged exposures to asbestos based on [a finite number of exposures to a defendant's product] in the 1960's constitutes proof sufficient to cause [the decedent's] cancer on its own . . . or that such exposure amounted to more than an insignificant or de minimus factor in the development of the disease that afflicted [the decedent] forty years after those exposures."[99]  Dr. Brody and Dr. Abraham reference no studies, reports or other data supporting the opinion that exposures to JCI's gaskets or packing could constitute a substantial contributing cause of Mr. Hays' mesothelioma.  An expert's belief that they cannot rule out any occupational exposures simply does not help the jury determine the critical question of specific causation.  Thus, the Court should strike the "every exposure" theory under *Daubert* and Rule 702.

---

[95] 44 A.3d 27, 56 (Pa. 2012).
[96] 712 S.E.2d 537, 553-55 (Ga. Ct. App. 2011).
[97] 239 S.W.3d 304, 320-21 (Tex. Ct. App. 2007).
[98] 355 B.R. 462, 476 (Bankr. D. Del. 2006)
[99] *Smith v. Ford Motor Co.*, No. 2:08-cv-630, 2013 U.S. Dist. LEXIS 7861, at *3 (D. Utah Jan. 18, 2013).

## VI.    CONCLUSION

For the foregoing reasons, this Court should prevent Plaintiff from opining, mentioning or suggesting that each and every occupational exposure to asbestos substantially contributed to

Respectfully submitted,

/s/ Michael R. Holt
M. STEPHEN SMITH
Florida Bar No. 0202541
MICHAEL R. HOLT
Florida Bar No. 0483450
RUMBERGER, KIRK & CALDWELL
Brickell Bayview Centre, Suite 3000
80 S.W. 8th Street (33130-3047)
Post Office Box 01-9041
Miami, Florida  33101
Telephone:  (305) 358-5577
Telecopier:  (305) 371-7580

and

THOMAS J. BURNS, ESQUIRE
BENJAMIN J. PUCCI, ESQUIRE
O'CONNELL, TIVIN, MILLER & BURNS
135 S. La Salle Street Suite 2300
Chicago, IL 60603
(312) 256-8800

Admitted Pro Hac Vice

Attorneys for Defendant John Crane Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the   19th   day of August, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

    /s/ Michael R. Holt
Counsel for Defendant