UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

MARY CHARLENE HAYS, Personal Representative of the Estate of William Hays,

        Plaintiff,

v.

FOSTER WHEELER ENERGY CORPORATION, et al,

        Defendants.

_____/

CASE NO. 09-81881-CIV-KAM

### JOHN CRANE INC.'S MOTION IN LIMINE TO PRECLUDE IMPROPER REFERENCE TO IRRELEVANT CRITICISM OF DR. PAUSTENBACH AND CARDNO CHEMRISK, INC.

Pursuant to Rules 402 and 403 of the Federal Rules of Evidence, Defendant, John Crane Inc. (JCI) seeks an Order, in *Limine*, precluding improper reference to irrelevant criticism of Dr. Paustenbach and ChemRisk, Inc.

**I.**    **INTRODUCTION**

Expert testimony factors prominently in products liability litigation. Opponents often cross examine opposing experts regarding potential bias. But the means of establishing bias are far from infinite; the evidence must be relevant and not unduly prejudicial. Plaintiffs may *not* attempt to have juries draw negative inferences against defendants or their experts based on unrelated work performed by the expert's colleagues. Yet that is exactly what Plaintiff attempts to do here.

She starts with the premise that a company called Cardno ChemRisk (ChemRisk), which employs JCI expert Dr. Amy Madl, is a bad or unethical business. Based upon this fiction,

Plaintiff surmises that Dr. Madl's opinions aren't trustworthy and that JCI acted improperly in the first place simply by consulting with ChemRisk. Plaintiff's "evidence" focuses not on Dr. Madl herself, or her work in this case, but rather upon worked performed by ChemRisk's founder years ago.

This "evidence" is remote, completely unrelated to asbestos and has absolutely nothing to do with Dr. Madl or her work in this case. The patent irrelevance of this evidence is plain. Work performed by other persons affiliated with ChemRisk, but who will not testify, has absolutely no bearing on the credibility of those who will. For these reasons and as set forth below, the Court should preclude reference to these irrelevant matters during trial.

## II. BACKGROUND

### A. Plaintiff's Claims

This is a maritime asbestos products liability action. Plaintiff claims that her husband, William S. Hays, worked with or around asbestos-containing products manufactured by JCI and numerous others during his lengthy naval career.[1] These products, she claims, caused Mr. Hays' malignant mesothelioma, which ultimately led to his passing on December 29, 2009.

### B. ChemRisk and Dr. Amy Madl

One of JCI's experts, Dr. Amy Madl, Ph.D., will discuss her personal testing of JCI's products and their impact (or lack thereof) on human health. Dr. Madl is currently a Senior Principal Health Scientist at ChemRisk. ChemRisk is a consulting firm specializing in human health risk assessment of environmental, occupational, and consumer product settings. Dr. Madl works at one of ChemRisk's several branch laboratories in Aliso Viejo, Orange County, California. She is a salaried employee. She is not an owner, shareholder or officer of ChemRisk

---

[1] The case began as a personal injury action while Mr. Hays was still alive. After his passing, Plaintiff amended the Complaint to assert claims based on wrongful death.

and has no financial stake in the profits of the company. Further, she evaluates her own cases and offers assessments and opinions independent of other experts or opinions.

Originally formed in 1985 by Dr. Dennis Paustenbach, ChemRisk has 10 locations, from San Francisco, California to Brooklyn, New York. The company employs numerous experts in a variety of fields. Presently, ChemRisk has more than 80 professionals with backgrounds in toxicology, industrial hygiene, epidemiology, toxicology, environmental sciences, medicine, statistical analysis, modelling and risk assessment.

### C. Dr. Madl's Deposition

During Dr. Madl's deposition, Plaintiff's counsel, among other topics, explored potential bias. This included questions regarding Dr. Madl's hourly rate, the amount of money she billed JCI for her casework and testimony.[2] None of this is surprising or improper. Plaintiff crossed the line, however, by asking Dr. Madl about irrelevant topics such as Dr. Paustenbach's involvement in unrelated matters.[3]

### D. JCI Corporate Representative Deposition

Plaintiff's improper emphasis on ChemRisk spilled into the deposition of JCI's corporate designee, Mr. George Springs. There, Plaintiff asked Mr. Springs questions about wholly irrelevant topics such as Dr. Paustenbach's opinions set forth in connection with tobacco litigation in Minnesota in 1990.[4] The questioning also explored ChemRisk's allegedly improper involvement with litigation involving chromium waste in the 1990's.[5]

None of this concerns either Dr. Madl or her methodologies. Rather, Plaintiff apparently is attempting to establish that Dr. Madl is an untrustworthy or bad expert based on positions

---

[2] *See* Exhibit "A", Dr. Madl Transcript (July 30, 2014), at pp. 12, ll. 16-23.
[3] *See* Madl Deposition, at pp. 72, ll. 3-24.; pp. 83-84, ll. 21-24 (discussing involvement with Dr. Paustenbach and measurements of airborne benzene concentrations).
[4] See Springs Deposition Exhibit 40, attached as Exhibit "B"
[5] *See* Springs Deposition Exhibits 41-42, attached as Exhibits C and D.

taken in unrelated litigation by Dr. Paustenbach and/or that the jury should think poorly of JCI for hiring an expert affiliated with a company like ChemRisk.

### III. EVIDENCE REGARDING DR. PAUSTENBACH AND/OR OTHER CHEMRISK PROJECTS UNRELATED TO DR. MADL'S CASE-SPECIFIC WORK IS IRRELEVANT AND UNDULY PREJUDICIAL

Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence and . . . the fact is of consequence in determining the action."[6] Even if evidence has some marginal shred of relevancy, the Court may exclude it where its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.[7]

Here, as it relates to JCI, Plaintiff alleges that Mr. Hays worked with or around asbestos-containing products. Dr. Madl will opine, among other things, about her testing of certain JCI products and their propensity (if any) to cause disease in humans. JCI does not dispute that Plaintiff may cross examine her on these topics. However, the field of inquiry regarding bias is not unbounded; it is limited by the requirement that the questions posed be relevant to establishing a witness' credibility.[8] Moreover, where the evidence or testimony regarding bias is likely to confuse or mislead the jury, Rule 403 precludes admissibility.[9]

In the instant matter, Plaintiff's counsel will attempt to examine Dr. Madl and JCI's corporate witness regarding Dr. Paustenbach, cigarette issues and a Wall Street Journal Article – none of which have anything to do with JCI, Dr. Madl or any of the tests she performed. Any such examination will inject collateral and irrelevant testimony regarding expert opinions given

---

[6] Fed. R. Evid. 401.
[7] Fed. R. Evid. 403.
[8] *See General Motors Corp. v. McGee*; 837 So. 2d 1010 (Fla. DCA 4th 2002); *Golian v. Wollschlager*, 893 So. 2d 666, 668 (Fla. 1st DCA 2005) (affirming the trial court's decision to prohibit line of questioning involving fees expert was paid in unrelated case or to raise matter during closing arguments).
[9] *See Tobin v. Leland,* 804 So. 2d 390 (Fla. 4th DCA 2001) (affirming trial court's decision to preclude line of questioning regarding bias, due to potential to confuse jury).

by others.  Other courts agree, and have precluded plaintiffs from introducing "articles from medical literature showing ChemRisk, Dr. Madl's employer, had been paid tens of millions of dollars to reach opinions and publish articles favoring asbestos defendants."[10]

Dr. Madl has no direct stake in the revenues of the ChemRisk or the cases in which the principals or other co-workers may be involved.  The work being performed by others in the corporation – on wholly unrelated matters -- in no way bears on the truthfulness or veracity of the testimony of Dr. Madl.  This testimony and/or evidence has zero probative value into Dr. Madl's potential bias or credibility.  Nor does it relate, in any way, to the methodology Dr. Madl herself may have used to form her opinions on the risk assessment of Mr. Hays' mesothelioma.  Indeed, that testimony does not have the tendency to make the existence of any fact pertinent to the issues in this case.

To the contrary, such evidence is calculated to mislead the jury into believing that JCI purchased a non-meritorious defense by hiring a bad company and pliant expert.  To permit Plaintiff's counsel to elicit evidence of other work performed by ChemRisk and/or its principals, and/or the reputation and/or work of other employees, would be completely irrelevant and highly prejudicial to JCI.

WHEREFORE, for the reasons set forth above, Defendant, John Crane Inc. respectfully requests the exclusion any references to Dr. Paustenbach and/or ChemRisk Inc. unrelated to the work of JCI's expert, Dr. Amy Madl.

---

[10] *See Garrelts v. Honeywell International, Inc.*, No. 4-12-0997, 2013 WL 6057074, at * 22-23 (Ill. App. 4 Dist. Nov. 15, 2013) (affirming defense verdict in favor of JCI where plaintiff introduced other evidence to explore Dr. Madl's individual bias; plaintiff did not establish that the trial court's ruling affected the outcome).

Dated: 8/28/14                                     Respectfully submitted,

                                                     */s/ Michael R. Holt*
M. STEPHEN SMITH
Florida Bar No. 0202541
MICHAEL R. HOLT
Florida Bar No. 0483450
RUMBERGER, KIRK & CALDWELL
Brickell Bayview Centre, Suite 3000
80 S.W. 8th Street (33130-3047)
Post Office Box 01-9041
Miami, Florida  33101
Telephone:  (305) 358-5577
Telecopier:  (305) 371-7580

and

THOMAS J. BURNS, ESQUIRE
BENJAMIN J. PUCCI, ESQUIRE
O'CONNELL, TIVIN, MILLER & BURNS
135 S. La Salle Street Suite 2300
Chicago, IL 60603
(312) 256-8800

*Admitted Pro Hac Vice*

Attorneys for Defendant John Crane Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of August, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                                           /s/ Michael R. Holt
                                                           Counsel for Defendant